IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ZACHERY WILSON, )
)
    Plaintiff, )
)
vs. ) CIVIL ACTION NO. 1:19-424-KD-N
)
ROBERT KELLY, *et al.*, )
)
    Defendants. )

**REPORT AND RECOMMENDATION**

Plaintiff Zachery Wilson, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 30). For the reasons discussed herein, it is ordered that this motion be granted, in part, and denied, in part.

### I.     BACKGROUND AND FACTUAL ALLEGATIONS[2]

**A.**     **Complaints.**[3]

Plaintiff asserts, while incarcerated at Holman Correctional Facility, Defendant Officers Kelly, Hudson, and Price "illegally" search his cell and used excessive force against him in violation of the Fourth and Eighth Amendments, respectively.

---

[1]     The Court converted the Defendants' Answers and Special Reports to a motion for summary judgment. (Docs. 20, 21, 27, 29).

[2]     The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riveria Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[3]     Plaintiff has filed both an original complaint (Doc. 1) and a Motion of Supplementary (Doc. 11), which was construed by the court as an amended complaint. (Doc. 23).

In his complaint, Plaintiff alleges that on July 11, 2019, at approximately 7:40 p.m., he observed Officer Kelly escort an inmate cuffed with his hands to the front, instead of to the rear, as regulated by the Standard Operating Procedures (S.O.P.) of the Alabama Department of Corrections. Plaintiff questioned Officers Kelly and Hudson about "the S.O.P. violation" and, in turn, Officers Kelly, Hudson, and Price searched his cell (illegally), while Plaintiff was in the shower, in violation of the Fourth Amendment. Upon returning to his cell from the shower, Plaintiff alleges the three officers each struck him in the head and back with their closed fists and nightsticks, in violation of the Eighth Amendment. Plaintiff further claims the officers left him in his cell, denying him medical care, until approximately 4:45 the next morning, when Lt. Banks made her rounds in the segregation unit. Plaintiff asserts that the defendants failed to complete an Incident Report or take pictures of plaintiff but insists his version of the facts is supported by surveillance cameras, a body chart, and x-rays.

In his amended complaint, Plaintiff alleges that Officer Hudson exerted excessive force against him on August 20, 2019, when he unnecessarily discharged chemical spray on him in the shower and refused to obtain prompt medical care or decontamination for Plaintiff. According to Plaintiff, after he completed his shower, he asked Officer Nelson to call the shift supervisor to resolve a "personal issue" (regarding a "processing phone call" that Plaintiff did not receive upon entering the segregation unit). (Doc. 11 at 1-2). Instead of the shift supervisor responding, Officer Hudson entered the segregation unit shower with a large cannister of Sabre Red (chemical spray) and sprayed a 6-10 second burst of the spray into the shower and on to Plaintiff, while Plaintiff posed no threat to security. Plaintiff alleges Officer Hudson then went to Cubicle 5 and returned with a small cannister of Sabre Red and again discharged multiple bursts of the spray into the shower and onto Plaintiff. Plaintiff claims he was left in the shower with the chemical agents

"lingering and suffering" for 25 to 30 minutes before being taken to the health care unit for decontamination – all while Officer Hudson sat inside Cubicle 5 smoking a cigarette.

Plaintiff requests monetary damages from each defendant in the amounts of $50,000 in compensatory damages and $50,000 in punitive damages.

**B.     Defendants' Answers and Special Reports.**

Defendants have answered Plaintiff's suit, denying the allegations asserted against them, and submitted Special Reports in support of their position. (Docs. 20, 21, 27, 29).

Defendants maintain that while conducting showers in the segregation unit on July 11, 2019, Plaintiff began shouting and making threats towards Officers Hudson and Kelly and appeared to be under the influence of narcotics. Officer Hudson wanted to search Plaintiff's cell (due to his behavior) once Plaintiff completed his shower, so Officer Kelly called for additional assistance to conduct the search, to which Officer Price responded. Defendants contend Plaintiff continued to be belligerent (screaming threats of physical harm to Officers Kelly, Hudson, and Price) as he was escorted back to his cell. Officers Kelly, Hudson, and Price then searched Plaintiff's cell, while he was present. The search produced no finding of contraband; the officers exited the cell, and Plaintiff's tray hole door was secured. Defendants assert that no report was made as no incident took place.

The medical records produced show that Plaintiff filled out a sick call request on July 12, 2019 (at approximately 2:00 a.m.), complaining that he had been "brutally assaulted by Officers Hudson, Kelly, and Parker [sic]". (Doc. 21-4 at 67). Plaintiff stated that he was struck several times on his head and back with a night stick, that his vision was blurry at times, that he experienced dizziness upon standing or lying down, as well as pain in the right side of his lower back and left side of his rib cage. (Doc. 21-4 at 67). Examination of Plaintiff (at approximately

4:30 a.m.) revealed areas of redness and swelling, including 6 cm area of redness to Plaintiff's left ribs, 2 cm raised area to his right forehead, and redness behind his left ear. (Doc. 21-4 at 68-69). X-rays of Plaintiff's skull, ribs, and chest were performed; the results of which were all unremarkable, with no fractures or abnormalities evidenced. (Doc. 21-4 at 87-89). The Defendants deny that the bruising noted on July 12, 2019 was caused by any action they took.

Defendant Officer Hudson affirms that on August 20, 2019, while he was helping conduct showers in the segregation unit, he observed that Plaintiff had been in the shower for approximately 25 minutes. Officer Hudson gave several direct orders for Plaintiff to submit to restraints and return to his assigned cell; however, Plaintiff refused to comply. Officer Hudson maintains that Plaintiff was being loud and banging on the shower door, proclaiming that he was not coming out of the shower. (Doc. 27-1 at 1). Officer Hudson asserts that he then went to Cubical 5 and retrieved a can of chemical agent, but that when he attempted to administer a one second burst of chemical agent, nothing came out. Officer Hudson then went back to Cubicle 5 and retrieved another can of chemical spray and returned to the shower and ordered Plaintiff to exit the shower. When Plaintiff refused to comply with the order, Officer Hudson sprayed a one second burst of chemical agent several times because Plaintiff kept blocking the spray. Plaintiff then requested to speak to a supervisor. Officer Hudson contends he called for Lieutenant Earl to come to the segregation unit, and Lieutenant Earl came and handcuffed Plaintiff and with the assistance of Officers Boudreaux and Tait escorted Plaintiff to the health care unit for decontamination and a body chart.

The medical records reveal that no injury was sustained, and Plaintiff's only statement to the nurse was, "I got sprayed." (Doc. 21-4 at 58). When Lieutenant Earl attempted to question Plaintiff about the incident, Plaintiff began making threats toward Officer Hudson, stating, "I'm gonna get your ass. Your['e] th[r]ough. Just wait till I get a hold of your ass." (Doc. 27-2).

Photographs were taken of Plaintiff, for evidentiary purposes, but Plaintiff refused to write a Use of Force statement. Plaintiff was secured back in his cell, pending disciplinary action for Failure to Obey a direct order and Threats.4

The Defendants answers and special reports have been converted by the court into a motion for summary judgment (Doc. 30).

C.   **Plaintiff's Response to Defendants' Motion for Summary Judgment.**

In response to the Defendants' Motion for summary judgment, Plaintiff challenges the lack of evidence supporting Defendants' claims that Plaintiff was hostile and made threats towards the officers on July 11, 2019, namely the lack of an incident report, daily officer report, or disciplinary actions. (Doc. 33 at 2). Plaintiff reiterates that without a "need" for force, any force used was excessive and unconstitutional. Plaintiff produces his July 12, 2019 sick call request, following the incident, complaining that he had been assaulted by Officers Hudson, Kelly, and Price the day before and was experiencing blurry vision, dizziness, as well as back and side pain. (Doc. 33 at 9). He also produced his body chart from July 12, 2019, in support that the force used against him was greater than *de minimis*, based on the documented injuries. (*Id*. at 2, 7). Plaintiff further produces a medical record, dated July 16, 2019, indicating Plaintiff suffered from dizziness, headaches, nausea, and blurred vision since Thursday, July 11, 2019. (*Id*. at 10).

Plaintiff also argues in his response to the motion that on August 20, 2019, Officer Hudson sprayed him with a chemical agent, multiple times, without cause, while he was waiting (in the shower) for a supervisor to arrive to speak with him. Plaintiff asserts he was left in the shower,

---

4   An internal investigation subsequently deemed the use of force justified. The Use of Force Investigative Report, however, was determined based on Officer Hudson administering a one second burst of "Sabre Red" to the facial area of Plaintiff to gain compliance, after Plaintiff had been in the shower for approximately 25 minutes, refused several orders to submit to restraints and return to his assigned cell, and stated, "I'm not going anywhere." (Doc. 27-3).

with the chemical agent on his body, for over an hour, without medical assistance. Plaintiff specifically disputes Officer Hudson's contention that the first canister of "Sabre Red" was empty, arguing "the first cannister was exceedingly discharged upon the plaintiff". (Doc. 33 at 6).

## II.  MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions,

> answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III. DISCUSSION AND ANALYSIS

#### A. QUALIFIED IMMUNITY DEFENSE.

Plaintiff has brought this suit against Defendants in their individual capacities, and the defendants have plead the defense of qualified immunity against the allegations asserted against

them. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). While there is no doubt that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted). As to the remaining claim, that Defendants illegally searched his cell, the officer defendants are entitled to qualified immunity unless Plaintiff can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether this action identifies any constitutional violation.

**B. Claims Under 42 U.S.C. § 1983.**

Plaintiff Wilson proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the named defendants, as employees of the Alabama Department of Corrections, are state actors for purposes of this action. Thus, to establish his asserted claims, Plaintiff must establish that the named defendants, personally, acted to deprive

him of a constitutional right.

### 1. Excessive Force.

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). In order to establish an Eighth Amendment excessive force claim against the defendants, Plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). While not every "malevolent touch" by a prison guard amounts to excessive force, a de minimis use of force is cognizable under the Eighth Amendment if it "is not of a sort repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (noting that an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim) (internal quotation marks and citation omitted). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not]

maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skirtch v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002). Accordingly, in determining whether or not force used was excessive, relevant factors include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Notably, prison officials "acting to preserve discipline and security" are given "broad deference" when evaluating whether force used was excessive or not. *Pearson v. Taylor*, 665 F. App'x 858, 863-64 (11th Cir. 2016).

### i. July 11, 2019.

The disposition of Defendants' motion for summary judgment regarding Plaintiff's July 11, 2019 excessive force claim turns on the "core judicial inquiry", "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. According to Plaintiff, after questioning Officer Kelly's compliance with proper handcuffing procedures of prisoners during escorts, Defendants assaulted him in his cell (striking him in the head and back with their closed fists and nightsticks). Plaintiff denies being "hostile, aggressive, or threatening" prior to the attack, as articulated by Defendants. (Doc. 33 at

2). Plaintiff further alleges that he was denied medical care following the incident, until approximately 4:45 the next morning.

The record before the court evidences that Plaintiff sought medical treatment at 2:00 a.m. on July 12, 2019. Plaintiff was examined in the health care unit, at approximately 4:30 a.m., where redness and swelling were observed to parts of Plaintiff's head, face, back, and ribs, and x-rays of Plaintiff's skull, ribs, and chest were ordered and obtained. The medical records also evidence that Plaintiff subsequently complained of related symptoms on July 16, 2019, for which he was provided pain medication. The record is also void of any disciplinary charges brought against Plaintiff for violations of threats, disorderly conduct, or any other infraction, despite Defendants' assertion that Plaintiff was "hostile" and "screaming threats of physical harm to Officers, Kelley, Hudson and Price while being escorted from the shower back to his assigned cell". (Doc. 21 at 3). Based on these facts, a reasonable jury could conclude that Defendants used force against Plaintiff and that the force was applied maliciously and sadistically to cause harm, rather than in a good faith effort to restore or maintain order. Based on Plaintiff's version of the facts, the only *Whitley* factor that appears to be unmet in this action is the third factor, as evidence suggest that Plaintiff received only mild injuries of bruising and swelling. While Defendants argue that Plaintiff's injuries are *de minimis*, the Supreme Court has held that, in the excessive force context, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

Although Defendants dispute Plaintiff's account of what occurred on July 11, 2019, at this procedural stage, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1139-

40 (11th Cir. 2007)(citing *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.")); *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)).

> When competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. *See Felicinano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Indeed, if "the only issue is one of credibility," the issue if factual, and a court cannot grant summary judgment. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996).

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

Accordingly, Defendants motion for summary judgment should be DENIED as to this claim, at this time.

### ii. August 20, 2019.

Plaintiff alleges that on August 20, 2019, while waiting in the shower for Lieutenant Earl to come see him, Officer Hudson sprayed him (multiple times) with two different cannisters of a chemical agent, despite that he "posed No-threat toward security" and was not "threatening, belligerent, [or] disorderly" (Doc. 11 at 2; Doc. 33 at 6). Defendant Officer Hudson, avers:

> On August 20, I was helping conducting showers in the Restrictive Housing Unit. Inmate Zachery Wilson was escorted to the showers by another officer. I observed inmate Wilson being loud and banging on the shower door. I asked inmate Wilson why was he beating on the shower door, inmate Wilson stated th[at] he was not coming out of the shower. I then went into Cube 5 and retrieved a can of chemical agent, the can was quite empty. I asked inmate Wilson several times to cuff up and exit the showers. Inmate Wilson refused. I then tried to administer a one second burst of chemical agent but nothing came out. At this time I then went inside of the

> cubicle and retrieved another can of chemical agent and approached the door to place handcuffs on inmate Wilson, inmate Wilson refused to cuff up again. I then sprayed a one second burst of chemical agent several times because inmate Wilson kept blocking the spray, at this time inmate Wilson requested to speak with a supervisor. I then called for Correctional Lieutenant Christopher Earl to come to Segregation. Lieutenant Earl came and handcuffed inmate Wilson to the rear and escorted inmate Wilson to the Health Care Unit for decontamination and a body chart.

(Doc. 27-1 at 1).

To overcome summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotation marks and citation omitted). And, the court is obligated to accept the plaintiff's version of facts, "provided they are sufficiently supported by evidence of record", *Sconiers*, 946 F.3d at 1263, and "specific facts" in Plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). However, the undersigned notes the existing tension between accepting the plaintiff's version of the facts as true while concurrently recognizing the parties' evidentiary burden on summary judgment. Defendant Hudson has put forth sufficient evidence that Plaintiff repeatedly refused orders to be placed in handcuffs, exit the shower, and return to his cell. Plaintiff, thus, bears the burden of showing sufficient evidence to establish a genuine dispute of material fact as to whether or not he was compliant with Officer Hudson's orders and putting forth allegations that the application of force extended beyond the need for force. Despite resolving all factual issues in Plaintiff's favor, the undersigned finds it cannot ignore Plaintiff's evidentiary burden on summary judgment, and Plaintiff's failure to meet his burden.

No doubt, "[p]rison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennet v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Specifically, force may be used against a prisoner who fails to

comply with the direct orders of an officer. *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (internal citation omitted). And, pepper spray has long been recognized by The Eleventh Circuit as "an accepted non-lethal means of controlling unruly inmates." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F,3d 701, 709 (11th Cir. 2010). Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation. *Pearson*, 665 F. App'x at 864. Accordingly, a short burst of pepper spray (around 5 seconds or less) is "not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Id.*

Not once does Plaintiff deny, dispute, or refute (in any pleading) that Officer Hudson ordered him to exit the shower or cuff up. Plaintiff further fails to deny, dispute, or refute that he failed to comply with Officer Hudson's multiple orders. Accordingly, the record before the court shows that Plaintiff repeatedly refused to follow Officer Hudson's orders to exit the shower and/or be placed in handcuffs and return to his cell. Notably, Plaintiff's general denial of misconduct (that he posed no threat to security and was not threatening, belligerent or disorderly) could be taken as a denial to specific disruptive conduct. *See Williams v. Rickman*, 759 F. App'x 849 (11th Cir. 2019) (The district court erred in summary judgment dismissal of the plaintiff's § 1983 excessive force claims against correctional officers because the plaintiff's sworn statements created an issue of fact as to whether or not he created a disturbance warranting the use of pepper spray. The defendants claimed the plaintiff was being disruptive, i.e., shouting profanities and kicking his cell door, and the plaintiff denied causing a disturbance. The Eleventh Circuit explained that "[a]t summary judgment, the general denial of *any* misconduct can, if the evidence

is viewed in the light most favorable to the speaker, be taken as a denial of *specific* misconduct."). However, here, Defendant Officer Hudson contends Plaintiff's failure to exit the shower necessitated the use of force. According to Defendant Officer Hudson, Plaintiff had been in the shower for over 25 minutes and Plaintiff would not exit the shower, even after direct orders to leave were given. Consequently, regardless of whether Plaintiff was combative, hostile, or disruptive, the issue in this case turns on whether or not Plaintiff failed to obey Defendant Hudson's orders to exit the shower. And, Plaintiff fails to address this issue at all; thereby, Plaintiff fails to show that there is a genuine issue of fact.

The record also evidences that the amount of force used was appropriate to the need. Defendants have submitted Plaintiff's body chart following the incident, which shows that Plaintiff had no injuries and made no complaints at that time. There are no subsequent medical records indicating lingering effects of the chemical spray. And, most importantly, Plaintiff fails to articulate any specific injury. In his complaint, Plaintiff makes the conclusory allegation that he was left in the shower with the chemical agents "lingering and suffering" for 25 to 30 minutes. He then makes the conclusory allegation in his response to this motion that he was left in the shower with the chemical agent on his body for (both) "an extended amount of time" and "over an hour". (Doc. 33 at 6). However, Plaintiff's pleadings are void of description or allegations of any specific harm or injury, including pain, burning, swelling, coughing, trouble breathing, confinement in a contaminated area, prolonged exposure to chemical fumes, etc. The undersigned notes that unlawful spraying of chemical agents can surely lead to an Eighth Amendment violation and may give rise to greater than *de minimis* physical injury,[5] however, Plaintiff has failed to carry

---

[5] Generally speaking, the harm suffered from pepper spray is considered *de minimis* and falls short of establishing a physical injury. *Cf., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 (11th Cir. 2003) (noting that "pepper spray ordinarily causes only temporary discomfort").

his burden of showing such here. *Cf., Hudson*, 503 U.S. at 8 ("What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue."); *see also, Lawrence v. Bowersox*, 297 F.3d 727, 731 (8th Cir. 2002) (in an incident involving pepper spray, a case-specific inquiry should take place "consider[ing] the extent of the pain inflicted in order to determine whether a constitutional deprivation has occurred").

The record further shows that Officer Hudson attempted to temper the severity of the response used by giving multiple orders to Plaintiff to exit the shower, thereby providing multiple opportunities for Plaintiff to comply, regardless of whether or not the first cannister of chemical spray was almost empty or not. Even taking Plaintiff's allegation as true, that "the first cannister was exceedingly discharged upon the plaintiff" (Doc. 33 at 6), Plaintiff still fails to show that the use of force was excessive - because the facts show (and Plaintiff does not dispute) that following the administration of the first chemical spray, Officer Hudson again ordered Plaintiff to exit the shower (which Plaintiff again refused to do) before the second cannister of the chemical agent was administered. Thus, as the facts currently stand, the *Whitley* factors are in favor of Defendant

---

However, when additional injuries are established, courts have found the "physical injury" to be greater than de minimis. *See Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008) (20-minute placement of prisoner in a small, unventilated, contaminated cell after the lawful use of pepper spray constituted excessive force); *Thompson v. Smith*, 805 F. App'x 893 (11th Cir. 2020) (greater than de minimis injury occurred when the plaintiff was left with the chemical agents on his face for approximately 20 minutes; experiencing coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to a cell that remained contaminated with pepper spray residue for a least an additional day); *Blount v. Farmer*, No. 7:14CV00418, 2015 U.S. Dist. LEXIS 93422, 2015 WL 4404810, at *3 (W.D. Va. July 17, 2015) (denying correctional officer's motion for summary judgment on objective inquiry of excessive force claim where inmate alleged pepper spray caused "coughing, sneezing, excessive mucus, and a painful burning sensation on his skin that lasted for a whole day.").

Officer Hudson, and Plaintiff has failed to carry his burden of establishing the use of chemical spray against him was excessive force.

Accordingly, summary judgment should be **GRANTED** in favor of Defendant Officer Hudson on this claim.

2. **Search of Plaintiff's Cell.**

As to Plaintiff's claim that the search of his cell by Defendants was illegal and unconstitutional, Plaintiff's claim fails.

Prisoners have no Fourth Amendment rights against searches of their prison cells. *Hudson v. Palmer*, 468 U.S. 517, 526, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."). The United States Supreme Court has explained,

> The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> Prisons, by definition, are places of involuntary confinement of persons who have demonstrated a proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. . . .
>
> The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." But it would be literally impossible to accomplish the prison objectives . . . if inmates retained a right of privacy in their cells. Virtually the only places inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.

*Id.* at 526-57 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 589-91, 104 S. Ct. 3227, 82 L. Ed. 2d 438 (1984) (The Fourth Amendment is not violated by "shake downs" of an

inmate's prison cell); *Stroud v. United States*, 251 U.S. 15, 40 S. Ct. 50, 64 L. Ed. 103 (1919) (The Fourth Amendment is not violated by the reading of an inmate's private mail.).

Accordingly, Plaintiff's claim that Defendants searched his cell illegally or without suspicion or cause is meritless. It is, thus, recommended that summary judgment be **GRANTED** in favor of Defendants, as to this claim, and the claim be dismissed.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of Defendants as to: (1) the Eighth Amendment excessive force claim related to August 20, 2019, and (2) the Fourth Amendment illegal search claim. Furthermore, summary judgment should be **DENIED** as to the Eighth Amendment excessive force claim related to July 11, 2019.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In

the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the _14th _ day of September 2020.


                                          /s/ Katherine P. Nelson  
                                          UNITED STATES MAGISTRATE JUDGE